**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jerry A. CRAWFORD, Defendant–Appellant.**

No. 91–6198.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 8, 1992.

Decided Jan. 4, 1993.

Ed Bryant, U.S. Atty., Cynthia J. Collins, Asst. U.S. Atty. (argued and briefed), Memphis, TN, for plaintiff-appellee.

April R. Ferguson, Asst. Federal Public Defender (argued and briefed), Memphis, TN, for defendant-appellant.

Before: MERRITT, Chief Judge; MARTIN and BOGGS, Circuit Judges.

BOGGS, Circuit Judge.

Jerry A. Crawford appeals his conviction for being a felon in possession of a firearm that had travelled in interstate commerce, in violation of 18 U.S.C. § 922(g). The district court sentenced Crawford to fifteen years of imprisonment, to be followed by three years of supervised release. Crawford raises two issues on appeal: 1) whether the district court erred by failing to dismiss the indictment because Crawford was not brought to trial within the time limits mandated by the Speedy Trial Act; and 2) whether the district court erred by failing to charge the jury on the proposed justification defense recognized by this court in *United States v. Singleton*, 902 F.2d 471, 472 (6th Cir.), *cert. denied*, 498 U.S. 872, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990).

## I

On May 6, 1989, Crawford, a felon, had a dispute with his wife, Sandra Jean Spencer. During the argument, Spencer crossed the street to her mother's house and called the police. When police officer William Oeding arrived on the scene about three minutes later, Spencer, family members, and neighbors were outside in the yard; Crawford was inside the house. Shortly after Officer Oeding arrived, Crawford came out of the house and immediately resumed his argument with Spencer. Officer Oeding separated Spencer and Crawford. Officer Oeding then observed that Crawford had his hand inside his overalls and also observed what appeared to be a pistol inside the overalls. Officer Oeding asked Crawford to remove his hand. When Crawford did as instructed, a pistol dropped to the ground. At this time, Officer Oeding put his foot on the pistol, seized Crawford, and held him against the police car. He then asked Crawford what he was doing with a pistol. Crawford explained that he was protecting himself from his wife and her brothers and sisters, who lived nearby. Shortly thereafter, back-up officers ar-

rived, and Crawford was arrested and charged with carrying a dangerous weapon.

Crawford and Spencer gave conflicting testimony as to how Crawford came into possession of the pistol. At trial, Crawford testified that the facts are as follows. Crawford began arguing with Spencer over whether she would loan him her car to drive his brother home. Spencer adamantly refused to loan Crawford the car. Crawford became frustrated and told her that he was going to call his uncle to come and pick him up. Spencer told him he was not going anywhere and stormed out of the house. Soon, she returned with a pistol. Spencer's mother entered the house before she did and begged Crawford not to go outside. Crawford remained inside, and Spencer and her mother returned to the mother's house across the street. Crawford, thinking that Spencer did not have a key, locked the doors.

Soon, Spencer returned, unlocked the back door, and entered the house with a pistol. Crawford met her at the back door and took the pistol away from her. Spencer ran out the door. Crawford testified that he took the pistol in order to protect himself. He claimed that he feared Spencer because she had threatened him in the past with a pistol.

Members of Spencer's family began to congregate in the yard, and Crawford feared they would try to hurt him. He remained inside the house until Officer Oeding arrived. When he did leave the house, he went directly to Officer Oeding. Before he had a chance to explain to Officer Oeding about the pistol, Spencer started arguing with him again. It was then that Officer Oeding noticed the pistol in his overalls and disarmed him. Spencer denied that she brought a pistol into the house. She also denied that the pistol later found on Crawford belonged to her.

On April 9, 1990, a federal grand jury indicted Crawford on one count of being a felon in possession of a firearm that had travelled in interstate commerce, in violation of 18 U.S.C. § 922(g). Crawford made his initial appearance before the court on October 25, 1990, and he was arraigned on October 29.

The district court set a report date for November 26, 1990, and a trial date for December 17, 1990. At the report date, defense counsel requested an additional two weeks to file pretrial motions. Defense counsel also pointed out a possible conflict on December 17, 1990. The court granted the request for additional time and reset the report date to December 10, with the parties agreeing that the intervening days would be excluded under the Speedy Trial Act. The court did not make an express ruling on the issue of a continuance.

On November 28, 1990, Crawford, through his attorney, filed a motion to suppress statements. On November 29, the court set the motion for a hearing on December 14, 1990. The government moved to reset the suppression hearing until December 17, 1990, and the court deferred the hearing until that time. The hearing was held December 17, and the court took the motion to suppress under advisement. On December 20, 1990, the court granted the motion to suppress.

No further action was taken on Crawford's case until March 7, 1991, when the court set the trial date for March 18, 1991. On March 11, 1991, Crawford moved to dismiss the indictment for violation of the Speedy Trial Act, 18 U.S.C. § 3161 et seq. The government responded with the following calculations. The government calculated thirty-three non-excludable days in the period between October 25, 1990, the date of the initial appearance, and November 28, 1990, the date Crawford filed the motion to suppress. The government argued that time under the Act was tolled between November 28 and December 20, when the court granted the motion to suppress. Finally the government argued that "[d]efendant's request for a continuance of the December 17, 1990 trial date tolled the running of time from December 17, 1990 until the new setting on March 18, 1991." Crawford argued that none of the days after December 20, 1990, were excludable because the court never expressly granted a continuance.

On March 22, 1991, the court entered a brief order, which stated:

Upon consideration of Defendant's Motion to Dismiss the Indictment in this case for violation of the Speedy Trial Act, and the government's response thereto, the Court concludes the motion should be denied for the reasons stated by the government in its response, which is so ordered this 21 day of March, 1991.

The trial commenced on March 18, 1991. During the trial, Crawford testified that he took the pistol from Spencer and kept it for a short period of time because he was afraid that Spencer and her family members would hurt him. He also testified that he tried to tell Officer Oeding why he had a pistol but, amidst the commotion, was not able to tell Officer Oeding before Officer Oeding noticed the pistol.

Crawford requested that the court instruct the jury on the defense of justification. Although 18 U.S.C. § 922(g) provides only that "it shall be unlawful" for a felon to possess a firearm, this court has recognized a justification defense, which may be asserted by a defendant if the defendant can prove the following four factors:

1) the defendant was under an unlawful and "present, imminent, and impending [threat] of such a nature as to induce a well-grounded apprehension of death or serious bodily injury" ...;

2) that defendant had not "recklessly or negligently placed himself in a situation in which it was probable that he would be [forced to choose criminal conduct]," ...;

3) that defendant had no "reasonable legal alternative to violating the law," ...; and

4) "that a direct causal relationship may be reasonably anticipated between the [criminal] action taken and the avoidance of the threatened harm." [citations omitted]

*United States v. Gant,* 691 F.2d 1159, 1162–63 (5th Cir.1982) (quoted in its entirety in *United States v. Singleton,* 902 F.2d 471, 472 (6th Cir.1990)). In *Singleton,* this court "emphasize[d] that the keystone of the analysis is that the defendant must

have no alternative—either before or during the event—to avoid violating the law." *Id.* at 473.

The district court refused to instruct the jury on the justification defense because it determined that Crawford had no well-grounded apprehension of death or bodily injury. During deliberation, the jury asked the court if it needed instruction on "the defense of self-defense." The court answered with a simple "no." The jury later sent another note, which stated: "Would fear for personal safety override the 'specific intent' to possess the firearm?" The court declined to answer the question.

Thereafter, the jury found Crawford guilty of being a felon in possession of a firearm that had travelled in interstate commerce, in violation of 18 U.S.C. § 922(g). Crawford was sentenced to fifteen years of imprisonment followed by three years of supervised release. For the reasons that follow, we dismiss the indictment and remand to the district with directions to determine whether the dismissal of the indictment should be with or without prejudice. Because we dismiss Crawford's indictment, we need not decide whether the district court was required to charge the jury on the proposed justification defense.

## II

The Speedy Trial Act, 18 U.S.C. §§ 3161–74 (1982), requires that the trial of a criminal defendant commence within seventy days from the date of the arrest, the filing of the indictment or information, or the first appearance before the court, whichever date last occurs. 18 U.S.C. § 3161(c)(1); *see also Henderson v. United States,* 476 U.S. 321, 323, 106 S.Ct. 1871, 1873, 90 L.Ed.2d 299 (1986). If the government fails to bring a defendant to trial within the seventy-day period, the court must dismiss the indictment or information on motion of the defendant. 18 U.S.C. § 3162(a)(2). Certain pre-trial delays toll the seventy-day limitation, however, including all time from the filing of a motion until the conclusion of the hearing on that motion. 18 U.S.C. § 3161(h)(1)(F); *see also United States v. Blackmon,* 874 F.2d 378,

380 (6th Cir.), *cert. denied,* 493 U.S. 859, 110 S.Ct. 168, 107 L.Ed.2d 125 (1989).

■ Crawford was arrested on May 6, 1989, indicted on April 9, 1990, and first appeared before the court on October 25, 1990; therefore, the speedy trial clock began to run on October 25, 1990—the latest of the three relevant dates. 18 U.S.C. § 3162(a)(2). The day of the first appearance and the day of the arraignment on October 29, 1990 are both excluded as "[a]ny period of delay resulting from other proceedings concerning the defendant...." 18 U.S.C. § 3161(h)(1); *see also United States v. Mentz,* 840 F.2d 315, 326 (6th Cir.1988). Three non-excludable days expired before the arraignment. At the arraignment, Crawford, through his attorney, requested and the court granted fifteen days to file pretrial motions. These fifteen days are excludable as delay from other proceedings under 18 U.S.C. § 3161(h)(1). *See United States v. Barnes,* 909 F.2d 1059, 1064–65 (7th Cir.1990). Therefore, the speedy trial clock was not restarted until November 14, 1990, after the fifteen-day period expired.

■ The clock continued to run for twelve days until November 26, 1990, when a report date was held, bringing the total to fifteen non-excludable days. The report date is excluded under 18 U.S.C. § 3161(h)(1). *Mentz,* 840 F.2d at 326. At the report date, the following exchange took place concerning the resetting of the report date and the continuance of the trial date.

Ms. Ferguson [defense counsel]: And, your Honor, I received some discovery from the government on November 21st, I have not yet had an opportunity to share it with Mr. Crawford because of the holidays intervening and he is some distance away in Mason. There will be some pretrial motions on this, and I understand that the government intends to file enhancement, it is an armed career criminal case.

What I am asking the court is a little more time to complete receiving all the government's pleadings and file summonses. And probably two weeks would do it, I think.

The Court: Any objection, Mr. Arvin?

Mr. Arvin [government counsel]: None Your Honor, as long as the time is excluded.

The Court: Is that satisfactory, Ms. Ferguson?

Ms. Ferguson: Yes, your honor. In addition, Your Honor, I do have another trial set on the 17th which I think is going to go. It has multiple co-defendants, I haven't heard otherwise and the individual has been locked up since—well, quite sometime longer than Mr. Crawford, so there would have been a conflict there anyway.

The Court: You want to continue the trial and then set another report date?

Ms. Ferguson: Yes sir, if possible.

The Court: You said two weeks from today report date [sic], that would be the 10th.

Ms. Ferguson: December 10th, that's fine. I should have all my motions filed by then, Your Honor.

The time between November 26, 1990 and December 10, 1990 was excluded with the consent of the parties in order to provide defense counsel with time to file pretrial motions. Although the court did not specify the authority for the exclusion, that exclusion is not challenged in this court. *See Henderson,* 476 U.S. at 331, 106 S.Ct. at 1877.

■ Crawford, through his attorney, filed a motion to suppress on November 28, 1990. The court held a hearing on the motion on December 17, 1990, and ruled on the motion on December 20, 1990. The day that the motion was filed is excluded. *Blackmon,* 874 F.2d at 381. Also, "all time that is consumed in placing the trial court in a position to dispose of a motion" is excluded. *Henderson,* 476 U.S. at 331, 106 U.S. at 1877. This period includes the time following the motion up to and including the day of the hearing on the motion. Finally, the period that the motion was "under advisement"—from the hearing on December 18 until the court granted the motion on December 20, 1990—is excluded

under 18 U.S.C. § 3161(h)(1)(J). *Mentz*, 840 F.2d at 326. Thus, the time from the day the motion was filed up to and including the day the motion was granted, November 28 until December 20, 1991, is excluded.

■ Therefore, as of December 20, 1990, only fifteen nonexcludable days had passed. The critical issue is whether the speedy trial clock was restarted on December 21, 1990. Crawford argues that the speedy trial clock restarted on December 21, 1990 and ran until March 11, 1991, when Crawford moved to dismiss his indictment for violation of the Speedy Trial Act. If Crawford is correct, this would amount to an eighty-day period, which, when added to the fifteen days discussed earlier, would make a total of ninety-five days countable between Crawford's first appearance and trial. The government argues that the eighty-day period was excluded because the court, in the exchange of November 26, 1990, quoted above, granted the defense counsel's request for a continuance of the trial, and that this grant of a continuance was proper under the "ends of justice" exclusion in 18 U.S.C. § 3161(h)(8).

Title 18 U.S.C. § 3161(h)(8)(A) provides for exclusion of:

> [a]ny period of delay resulting from a continuance granted by any judge ... at the request of the defendant ... if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

Crawford concedes that the district court had a basis to grant an "ends of justice" continuance because defense counsel requested two weeks to file pretrial motions and informed the court of a possible conflict that counsel would have on December 17, 1990. But, in light of the fact that the court disposed of the only pretrial motion on December 20, Crawford argues the Speedy Trial Act was violated because 1) the court failed to inquire into the reasonableness of the delay, 2) the court failed to explain properly its reasoning for the delay, 3) the court failed to specify the length of the delay when the continuance was

granted, and 4) there was no basis for the court to exclude the entire period from December 21, 1990 to March 18, 1991.

■ Under the Speedy Trial Act, a court may grant an "ends of justice" continuance if "the failure to grant such a continuance ... would unreasonably deny the defendant ... continuity of counsel...." 18 U.S.C. § 3161(h)(8)(B)(iv); *see also United States v. Cianciola*, 920 F.2d 1295, 1299 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2830, 115 L.Ed.2d 1000 (1991). More is required than the mere existence of a basis for the continuance, however. Section 3161(h)(8)(A) of the Act provides that the time during an "ends of justice" continuance is not excludable "unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial."

■ The Sixth Circuit has stressed that a continuance should not be granted lightly. *United States v. Nance*, 666 F.2d 353, 356 (9th Cir.), *cert. denied sub nom. Lee v. United States*, 456 U.S. 918, 102 S.Ct. 1776, 72 L.Ed.2d 179 (1982). The district court must set forth the reasoning supporting the determination that the interests served by the grant of the continuance outweigh the defendant's and the public's interest in a speedy trial. *Cianciola*, 920 F.2d at 1299. The reasons for the grant of the continuance must be set forth in the record, either orally or in writing. *Id.* Although the court is not required to state findings at the time that the continuance is granted, the findings "must actually have been the factors motivating [its] decision to grant the continuance." *United States v. Crane*, 776 F.2d 600, 606 (6th Cir.1985). Therefore, the court is allowed to state the reasoning later in an order denying a motion to dismiss charges, but the reasons stated must be the actual reasons that motivated the court at the time the continuance was granted.

In its order of March 21, 1991, denying Crawford's motion to dismiss, the district court did nothing more than adopt the ar-

guments presented by the government. Yet, the government's entire argument consisted of the following conclusory sentence: "Defendant's request for a continuance of the December 17, 1990 trial date tolled the running of time from December 17, 1990 until the new setting on March 18, 1991." In *United States v. Richmond*, 735 F.2d 208 (6th Cir.1984), this court stressed that a trial court must make findings that the continuance serves the ends of justice and that those findings must be made before the continuance is granted. In *Richmond*, the district court listed three justifications for the denial of a motion to dismiss the charges, but failed to support those justifications with facts. This court reversed the district court and dismissed the indictment, stating:

> Nowhere in either the December 8, 1982 order, which directed entry of the continuance, or the January 19, 1983 order, which denied Richmond's motion to dismiss the indictment, does the district court represent that it had made the requisite findings prior to granting the continuance. Indeed, the December 8, 1992 order nowhere states that the basis for granting the continuance was that the continuance served the ends of justice.

*Id.* at 216; *see also Crane*, 776 F.2d at 606–07.

Moreover, the district court's wholesale adoption of the government's argument would be insufficient even if the government had made a more persuasive and fact-specific argument. There is no indication in the record that the court gave any thought as to whether the continuance would serve the ends of justice *before* granting the continuance. The court made no statement of reasons or findings of facts when the continuance was granted. The court did not specify or approximate the length of the continuance.[1] And most significant, on November 26, 1991, the date

that the continuance was allegedly granted, the court did not even explicitly grant a continuance.

### III

Because the district court neither explicitly granted a continuance nor explained the reasoning that would have motivated a conclusion that a continuance would serve the ends of justice, we dismiss the indictment. We REMAND the case to the district court with directions to determine whether the indictment should be dismissed with or without prejudice. In the event the district court dismisses Crawford's indictment without prejudice, if the facts as developed at any new trial arguably support a justification defense as outlined in *United States v. Singleton*, 902 F.2d 471, 472 (6th Cir.1990), and if Crawford requests that the jury be charged on the justification defense, the jury should be so charged.

MERRITT, Chief Judge, concurring.

I concur in the result that the case should be dismissed because it was not brought within the 70 days required by the Speedy Trial Act. I write separately to point out facts concerning the criminal case load in Memphis that are a contributing cause. As a result of programs developed by the Department of Justice, many routine drug and firearms cases like this one have been taken from state law enforcement officials and state prosecutors by federal officials for prosecution in the federal courts. This has overtaxed the capacity of the federal courts and public defenders in Memphis. The District Court last year spent 70% of its trial time in criminal cases. The result is a backload of civil cases and difficulty in scheduling for trial criminal cases on a timely basis. Figures from the clerk's office in Memphis suggest the cause of the problem. The number of criminal defendants in firearms cases has increased

---

1. At oral argument, the government proposed that since the district court failed to specify the length of the continuance, we should infer that the court granted the continuance for a "reasonable" period of time. Government counsel, however, cited no precedent for this argument and had no recommendation for what length of time would be reasonable. We are not aware of any court that has addressed this issue. We do not reach the issue because here the court not only failed to specify the length of a continuance, the court failed explicitly to grant any continuance.

almost tenfold from 1986 to 1992—from 9 to 85. The number of drug cases has increased from 54 to 184 with 239 criminal defendants.

The federal courts, with less than 10% of the judges of general jurisdiction in the United States, were not intended to take the place of state courts for routine offenses in which both courts have concurrent jurisdiction. Under the system of federalism devised by our founders and maintained until recently, federal prosecutors have not sought to displace the state systems of criminal justice in routine cases. This is no longer the case as routine street crime cases like this firearms case are brought in federal court in order to insure longer sentences under the sentencing guidelines and mandatory minimum sentencing laws (here a fifteen year sentence).

The prosecutorial arm of the federal government has increased dramatically since 1981. The budget of the United States Attorneys offices, for example, has increased 6 fold to just under $1 billion in the last decade. During this period, in which local law enforcement has been displaced in many cases, the problem of street crime has greatly increased. At the same time the costs of enforcement at the federal level have skyrocketed.

The federal courts can process only a finite number of criminal cases. The Speedy Trial Act expressly states that overcrowded criminal dockets do not justify delaying the trial of cases. The only remedy therefore under the Act may be the dismissal of some criminal cases. When that course becomes necessary, district courts should give serious consideration to dismissal of those cases in which federal courts share jurisdiction with state courts. This will require dismissing those routine street crime cases in which the state courts have concurrent jurisdiction with the federal courts so that those cases can go forward in state court, as in the past.