61 F.3d 904
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ryan L. THOMPSON, Defendant-Appellant.
 No. 94-4157.
 United States Court of Appeals, Sixth Circuit.
 July 24, 1995.
 
 On Appeal from the United States District Court, for the Northern District of Ohio, No. 93-00012; Paul R. Matia, District Judge.
 N.D.Ohio
 REVERSED.
 Before: NELSON and DAUGHTREY, Circuit Judges, and JARVIS, District Judge.*
 PER CURIAM.
 
 
 1
 This is an appeal from a conviction for drug trafficking and firearms offenses. Concluding that the case was not brought to trial within the time required by the Speedy Trial Act, we shall reverse the conviction.
 
 
 2
 * The defendant, Ryan L. Thompson, was arrested in a raid on a crack house in Cleveland, Ohio, in March of 1992. Two other occupants of the house, Walter Wilkins, and Mitzi Wade, were arrested at the same time.
 
 
 3
 Police found ninety-two rocks of crack cocaine hidden in a detergent box in the kitchen, nine rocks on the living room table, and two in Mr. Wilkins' pocket. They also seized drug paraphernalia, a .25 caliber pistol, a .22 caliber pistol, and a 12 gauge sawed-off shotgun.
 
 
 4
 On January 6, 1993, a grand jury indicted Mr. Thompson for possession of crack cocaine with intent to distribute it, a violation of 21 U.S.C. Sec.841(a)(1); carrying and using firearms in relation to a drug trafficking crime, a violation of 18 U.S.C. Sec.924(c)(1); and possessing an unregistered shotgun, a violation of 26 U.S.C. Sec.5845(a) and (d). Mr. Wilkins was also charged with possession of cocaine with intent to distribute it.
 
 
 5
 The case was assigned to the late Judge Frank Battisti. Messers. Thompson and Wilkins were arraigned on January 20, 1993, and were treated as co-defendants until Mr. Wilkins pleaded guilty a month before trial.
 
 
 6
 The case was reassigned in March of 1994 and went to trial before a jury in May of that year. The court declared a mistrial after the case was submitted to the jury, and a retrial was conducted in August. This time Mr. Thompson was found guilty on all counts.
 
 II
 
 7
 Subject to various statutory exclusions, the Speedy Trial Act, 18 U.S.C. Secs. 3161-3174, requires that a defendant be brought to trial within seventy days of his indictment or initial appearance in court, whichever is last. If the deadline is not met, the court must dismiss the indictment on motion of the defendant. Sec. 3162(a)(2).
 
 
 8
 Here the speedy trial clock started running on January 21, 1993, the day after Mr. Thompson's arraignment. See United States v. Crawford, 982 F.2d 199, 203 (6th Cir. 1993). It continued to run until February 1, when the co-defendant filed a motion for discovery. It did not start running again until March 17, when the court denied a motion for a bill of particulars. It then ran until April 19, 1993, when Mr. Wilkins filed a motion to suppress evidence. On April 28, 1993, Mr. Thompson likewise filed a motion to suppress evidence, together with other motions including one for an extension of time to file additional motions.
 
 
 9
 On May 4, 1993, Judge Battisti granted Mr. Thompson's motion for an extension of time. The ruling was made in a marginal notation that read as follows:
 
 
 10
 "Motion granted. Defendant has until 14 days from the final pretrial to file additional motions. This motion is granted in the interest of justice and pursuant to 18 U.S.C. Sec.3161. It is so ordered. [signed] Frank J. Battisti 5-4-93"
 
 
 11
 Section 3161(h)(8)(A) of the Speedy Trial Act provides for the exclusion of:
 
 
 12
 "[a]ny period of delay resulting from a continuance granted by any judge ... if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable ... unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by granting such continuance outweigh the best interests of the public and the defendant in a speedy trial."
 
 
 13
 (Emphasis added.)
 
 
 14
 No such findings were ever made here -- and without the requisite findings, ends-of-justice continuances are not excludable. United States v. Crawford, 982 F.2d 199 (6th Cir. 1993); United States v. Richmond, 735 F.2d 208 (6th Cir. 1984).
 
 
 15
 The district court's conclusion that the Speedy Trial Act was complied with here rested not on the ends-of-justice continuance, but on the fact that on April 28, 1993, Mr. Thompson filed a motion to suppress evidence and the motion was not denied until May 17, 1994. The court held that the entire 375 day period was excludable. This holding was erroneous.
 
 
 16
 The Speedy Trial Act distinguishes between a "delay resulting from any pretrial motion, from filing of the motion through the conclusion of the hearing on ... such motion," 18 U.S.C. Sec. 3161(h)(1)(F), and "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." 18 U.S.C. Sec. 3161(h)(1)(J) (emphasis added). The hearing on Mr. Thompson's suppression motion was continued until August 19, 1993, when a magistrate indicated he would recommend that the motion be denied. The hearing on Mr. Wilkins' motion was continued until September 1, 1993, apparently because Wilkins had disappeared. The magistrate issued a report and recommendation on the motions on September 8, 1993.
 
 
 17
 Unless the court requests additional filings, the "under advisement" period "will normally beg[i]n on the day following the conclusion of the hearing on the motion." Mentz, 840 F.2d 315, 327 (6th Cir. 1995), citing Henderson v. United States, 476 U.S. 321, 331 (1986). The time excludable under Sec. 3161(h)(1)(F) ended, at the latest, on September 8. Thereafter the district court had the issue under advisement.[1] The thirty excludable days under Sec. 3161(h)(1)(J) ended on October 8, 1993. Cf. United States v. Moran, 998 F.2d 1368, 1372 (6th Cir. 1993); Mentz, 315 F.2d at 326 n.22. Two more excludable days passed subsequently. Mr. Thompson filed a motion to dismiss on April 11, 1994, at which point a total of 225 non-excludable days had elapsed since his arraignment. The motion to dismiss ought to have been granted.
 
 
 18
 It is ordinarily the district court that determines whether the indictment should be dismissed with or without prejudice. See United States v. Taylor, 487 U.S. 326 (1988); 18 U.S.C. Sec.3162(a)(2). Where the circumstances clearly indicate that a dismissal should be without prejudice, however, we may so instruct the district court. United States v. Tunnessen, 763 F.2d 74, 80 (2d Cir. 1985). This is such a case. Mr. Thompson was charged with a serious offense. The record shows no procedural abuse by any party. The record of the trial is fully developed and could be used should any witnesses prove unavailable. Accordingly, we instruct the district court to dismiss the indictment without prejudice.
 
 III
 
 19
 Because we are reversing the conviction, we need not reach the issues raised by Mr. Thompson with respect to his second trial. Mr. Thompson argues that the court erred in declaring a mistrial initially, however, and he could not be retried if we were to accept this argument. We do not accept it.
 
 
 20
 The background of the mistrial is as follows. The shotgun seized from the crack house was sent to the jury room. Neither party noticed that a police department report stating that Mr. Thompson owned the shotgun and had acquired it off the streets was folded up and stapled to the shotgun. A juror noticed the report, which had not been received in evidence, and read it. The jury then asked "whether it is appropriate for one juror, who read the contents of the document attached to the shotgun, to share its contents with the rest of the jurors in light of its potentially prejudicial nature."
 
 
 21
 Defense counsel admitted to being negligent in failing to inspect the document stapled to the gun, and he asked the court to instruct the jury that the document was not relevant and was not to be considered. He stated that he was willing to waive any prejudice, because only one juror had read the document and the issue of the ownership of the gun had been fully litigated at trial. The government countered that defense counsel having stated on the record that he had been negligent, a mistrial was necessary because a guilty verdict would be subject to reversal, or at least lengthy habeas proceedings. The court agreed.
 
 
 22
 The declaration of a mistrial under these circumstances did not constitute an abuse of discretion. Even though only one juror had seen the document, that juror clearly believed the document was prejudicial; the query indicates that the other jurors apparently knew one person had seen what could be a prejudicial document, and they wanted to read it too. The potential for a tainted jury is obvious.
 
 
 23
 The conviction is REVERSED, and the case is REMANDED with instructions to dismiss the indictment without prejudice.
 
 
 
 *
 The Honorable James H. Jarvis, Chief District Judge for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 That Mr. Thompson later filed untimely objections to the magistrate's report does not change this analysis. Such objections must be filed within ten days of receiving the report. Fed. R. Civ. P. Sec.72(a). After this period elapsed, the court had no reason to expect further filings, and was in a position to dispose of the motion. Cf. Henderson, 476 U.S. at 330-31