**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0180n.06**
**Filed: March 9, 2005**

**No. 03-6260**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | |
| | ) | **ON APPEAL** FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| JOSEPH STORY, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| **Defendant-Appellant.** | ) | **O P I N I O N** |

**BEFORE: NORRIS and DAUGHTREY, Circuit Judges; OLIVER, District Judge.**[*]

**ALAN E. NORRIS, Circuit Judge.** Defendant Joseph Story appeals from a jury verdict that found him guilty

of participating in a drug trafficking conspiracy, 21 U.S.C. § 846, and of possessing narcotics with the intent to distribute

them, 21 U.S.C. § 841(a). On appeal, he contends that the district court erred in three respects: 1) by not dismissing the

indictment based upon a violation of the Speedy Trial Act of 1974 ("the Act"), 18 U.S.C. §§ 3161-74; 2) by not

suppressing evidence derived from post-arrest interviews that Story gave to an FBI agent without benefit of counsel; and

3) by enhancing his base offense level by two points because he possessed a firearm during a drug transaction, U.S.S.G.

§ 2D1.1(b)(1) (2002), and by sentencing him to a higher drug quantity than what was reflected by the jury's guilty

verdict.

**I.**

On March 26, 2002, a grand jury returned a nine-count indictment that charged three individuals with various

drug trafficking activities in the Johnson City, Tennessee area. Story was named in the general conspiracy count, as well

---

[*] The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by
designation.

as in two substantive counts that alleged possession with intent to distribute. Story was arrested on April 1, co-defendant

Angelo Hinson on May 21, and co-defendant Derek Tapp on July 16. All were detained pending trial.

The details of the drug trafficking operation are not particularly relevant to the issues presented to us on appeal.

As charged in the indictment, the group dealt crack cocaine for about a year beginning in February 2001.

After the verdict, the district court sentenced Story to 360 months of imprisonment, ten years of supervised

release, and imposed an assessment of $200.

**II.**

*The Speedy Trial Act*

The provisions of the Act were recently summarized by this court:

> The Act mandates that "that a defendant be brought to trial within seventy days from the date of arrest, the filing of the indictment or information, or the first appearance before the court, whichever is later." 18 U.S.C. § 3161(c). An indictment must be dismissed if a criminal defendant is not tried within the time allowed by the Act. 18 U.S.C. § 3162(a)(2). The Act, however, contains numerous provisions permitting the tolling of the 70-day period, including "delay resulting from any proceeding, including any examinations, to determine the mental competency . . . of the defendant; . . . delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion; [and] . . . delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." 18 U.S.C. § 3161(h)(1).

> Moreover, delays due to continuances granted by the court are excluded if "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). The trial court must state on the record, however, either orally or in writing, "its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." *Id.*; *see also United States v. Crawford*, 982 F.2d 199, 204 (6th Cir. 1993) (dismissing the indictment because the trial court did not state on the record its "ends-of-justice" reasoning).

> Where, as is the case at bar, multiple defendants are charged together and no severance has been granted, one speedy trial clock governs. 18 U.S.C. § 3161(h)(7). As such, the excludable delay of one defendant is ascribed to that of all of his codefendants. *United States v. Culpepper*, 898 F.2d 65, 66-67 (6th Cir. 1990).

*United States v. Cope*, 312 F.3d 757, 776-77 (6th Cir. 2002). Moreover, "[w]e review the district court's 'ends of justice'

determination for abuse of discretion." *United States v. Barnes*, 251 F.3d 251, 256 (1st Cir. 2001) (citing *United States*

*v. Mitchell*, 723 F.23d 1040, 1044 (1st Cir. 1983)).

On July 1, 2002, Story filed three motions: for an extension of time to file further motions, for disclosure of exculpatory evidence, and for severance from co-defendants who had yet to be apprehended. He followed up these motions with a motion to dismiss on July 16 based upon an alleged violation of his right to a speedy trial.

The final co-defendant, Tapp, was arraigned on July 16, 2002. Trial was initially scheduled for August 22, 2002. On July 30, however, both Hinson and Tapp filed motions to continue the August 22 trial date.

After conducting a hearing, a magistrate recommended that the motion to dismiss be denied because the delay was "reasonable" as used in 18 U.S.C. § 3161(h)(7). The district court adopted the recommendation on August 23. The magistrate also denied the motion to sever.

On August 5, the district court granted the motions to continue the trial from August 22 to November 5, stating that "this delay is in the interest of justice and pursuant to 18 U.S.C. § 3161(h)(8)(A) to permit the defendants additional time to prepare for trial, review the evidence, and prepare and file motions." A second continuance was granted on the motion of defendant Hinson in an order filed August 23, which set a trial date of November 19. Once again, the district court invoked the "interest of justice" language in its order.

Story benefitted from these continuances even though he did not request them. In September he filed a motion to suppress evidence that was gathered as a result of statements given to an FBI agent without the benefit of counsel. An evidentiary hearing was conducted in October. On October 18, the magistrate denied two of Story's pending motions (to strike the mention of an alias and for the production of exculpatory evidence) and also issued a report that recommended that the motion to suppress be denied. Story did not file any objections to the report, and it was adopted by the district court on November 6.

On October 30, defendant Hinson filed another motion to continue the trial, which the district court granted the same day. This time the district court did not cite the "interests of justice," but simply noted that the continuance until January 14, 2003 "is a date within the confines of the Speedy Trial Act."

On November 18, defendant Tapp pleaded guilty to the conspiracy count of the indictment.

On December 23, 2002, Story filed a motion to inspect the jury list and an ex parte motion under seal. The magistrate judge granted both motions in separate orders on December 27, 2002.

On December 30, 2002, the district court rescheduled the trial date to January 22 on its own initiative. It again noted the new date still fell within the "confines" of the Act. A third order to the same effect, this time setting a January 29 trial date was entered by the district court on January 6. On January 24, 2003, five days before trial, defendant Hinson moved for a new attorney. The district court granted the motion on the same day and set a new trial date of April 15 to allow counsel to come up to speed. This time the district court suspended the speedy trial clock, finding that the delay was in the "interest of justice."

In early April, yet another problem arose. It came to light that Hinson's new attorney, Scott Pratt, also represented a man named Dariel Thompson who had been charged in a separate indictment with participating in the same conspiracy as Hinson and Story. In fact, Thompson was scheduled to testify against Hinson as part of a cooperation agreement. The district court responded by ordering a hearing and severing Story to allow him to proceed to trial as scheduled on April 15. The government filed a motion for reconsideration, stating that "defendant Story and his codefendant Hinson are so intertwined, a severance will result in two identical trials thus severely impacting judicial economy. More importantly, new counsel for defendant Hinson was appointed to represent Hinson on April 8, 2003 and it would not be unreasonable to schedule this trial with both defendants by May 9, 2003. That additional delay of twenty-four days will in no way prejudice defendant Story[.]"

Informed that defendant Story would need to reply to the motion to reconsider, the district court rescheduled trial for May 7, finding "due diligence has [been] exercised but this continuance is warranted because the ends of justice outweigh the interests of the defendant and the public in a speedy trial."

Story filed a response to the government's motion for reconsideration on April 21. He argued that the government knew, or should have known, of the potential conflict of interest involving Scott Pratt. Hence, the time since his appointment on January 24 should not be counted as an excludable delay under the Act. He also renewed his motion to sever because of the "strong possibility . . . that co-defendant Hinson and his counsel could request more time to prepare . . . ." For the same reasons, Story filed a motion to dismiss the indictment with prejudice, pointing out that more than a year had elapsed since his arraignment.

The district court denied the government's motion for reconsideration and Story's motion to dismiss the indictment. After Hinson entered a guilty plea on May 5, Story's trial began as scheduled on May 7.

The parties agree that the speedy trial clock began to tick when defendant Tapp was arraigned on July 16, 2002. At that time, Story's pre-trial motions were pending before the court and, as summarized above, other motions were submitted during the summer and fall. The Act provides that "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion . .." may be excluded from the 70-day trial clock. 18 U.S.C. § 3161(h)(1)(F). Moreover, "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court" likewise is not counted. 18 U.S.C. § 3161(h)(1)(J). In this case, the district court had pending motions that stayed the running of the clock until November 19, 2002. The district court also granted two "ends of justice" continuances, which reset the trial date to November 19, and provide a second reason for excluding the time between July 16 and November 19.

The government concedes that the clock began to run on November 20 when the district court set a January 24 trial date. However, Story filed motions on December 23, effectively stopping the clock until they were decided on December 27. The clock continued to run until January 24 when Hinson filed his motion for attorney substitution. Therefore, the clock ran from November 20 to December 22, and again from December 28 to January 23, for a total of 60 days.

Story contends that the district court erred in granting an "ends of justice" continuance based upon the substitution of counsel. Therefore, he argues, the period between January 24 until his trial on May 7 should not have been excluded, and the 70-day period defined by the Act was exceeded. We affirm the district court's order declining to dismiss the indictment. This prosecution involved three defendants and numerous pre-trial motions. It is not clear when the government became aware of the representation problem involving Mr. Pratt because the conflict stemmed from separate, but related, prosecutions. However, as soon as the conflict came to light, a substitution occurred, and the district court severed Story's case from that of his co-defendant. For that reason, the district court properly

granted an "ends of justice" continuance and the speedy trial clock did not run for the time period between January 24

and May 7. Sixty days elapsed between arraignment of the last codefendant and trial, which is not a violation of the Act.

*Motion to Suppress*

We now turn to Story's motion to suppress. On September 30, 2002, Story filed a motion to suppress "any and

all observations of law enforcement officers and any other tangible or intangible evidence obtained during, or directly

or indirectly derived from, the interrogations of defendant by the First Judicial District Drug Task Force and/or Federal

Bureau of Investigation subsequent to his arraignment and appointment of legal counsel on January 17, 2002 in the

General Sessions Court for Washington County at Johnson City, Tennessee for the offenses of simple possession of

marijuana and possession of schedule II narcotics for resale." A magistrate conducted a hearing before issuing a report

recommending that the motion be denied. The district court adopted the report.

"When reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear

error and its conclusions of law *de novo*." *United States v. Hurst*, 228 F.3d 751, 756 (6th Cir. 2000) (citing *United States

v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999)). Given that standard of review, the magistrate's report sets

forth the facts:

> The facts are undisputed: In January of 2001, defendant came to the attention of federal and state drug
> task force agents as a distributor of crack cocaine. Thereafter, defendant became a "target" of an on-
> going investigation known as "Half Serious."
>
> On January 17, 2002, defendant was arrested by a traffic officer of the Johnson City Police
> Department. Drug Task Force Agent Matthew Thompson overheard the police officer relating the
> details of the traffic stop to his dispatcher, and Agent Thompson recognized that the person so stopped
> was defendant herein. Agent Thompson contacted the traffic officer and told him that he should
> thoroughly check defendant because he could be hiding crack cocaine on his person. Defendant was
> transported to the Washington County Detention Center and, as Agent Thompson predicted, a quantity
> of crack cocaine was found hidden in defendant's shoe. Defendant was charged with possession of
> crack cocaine for resale, possession of marijuana, and various driving offenses.
>
> Sometime later that day, Agent Thompson went to the Washington County Detention Center to talk
> to defendant. After advising defendant of his constitutional rights, Agent Thompson talked with him
> for approximately fifteen minutes. Agent Thompson told defendant that he was a target in a federal
> investigation and that it would be in his best interest to meet and cooperate with them in the future.
> Defendant gave no statement at that time. Agent Thompson provided defendant with a phone number
> where defendant could reach him if he wished to talk.

Still later on January 17, sometime after defendant's conversation with Agent Thompson . . . , defendant requested . . . court-appointed counsel to represent him with respect to the state charges. . . .

After his release from jail, Story contacted Agent Thompson. The two met and Thompson gave Story his *Miranda* warnings. During this conversation, the two did not discuss the pending state charges nor did Thompson ask if Story had an attorney. Instead they talked in general terms about drug trafficking in Johnson City and Thompson indicated that FBI Agent Rainer Drolshagen would be interested in any information that he could provide.

Story initiated contact with Drolshagen and the two met at the FBI office in Johnson City on February 6 and 21, 2002. Drolshagen told Story that he was the target of an investigation and that he was free to terminate the interview. According to his suppression hearing testimony, he was aware that Story had been arrested on January 17 on state charges but was unaware of the status of the case and did not consider whether Story was represented by counsel. Drolshagen took notes during the interview and later testified at Story's federal trial.

On April 1, various members of the drug trafficking operation, including Story, were arrested on outstanding federal drug trafficking indictments.

Although he did not cite to it in his motion to suppress, Story agrees that a case relied upon by the magistrate, *Texas v. Cobb*, 532 U.S. 162 (2001), provides the legal framework for this issue. In *Cobb,* the Court was asked to determine whether the Sixth Amendment right to counsel attached not only to the offense with which a defendant is charged but to other offenses "closely related factually" to the charged offense. Construing an earlier opinion, the Court held "that our decision in *McNeil v. Wisconsin*, 501 U.S. 171 (1991), meant what it said, and that the Sixth Amendment right is 'offense specific.'" *Id.* at 164. It went on to provide the following analytical approach to the issue:

Although it is clear that the Sixth Amendment right to counsel attaches only to charged offenses, we have recognized in other contexts that the definition of an "offense" is not necessarily limited to the four corners of a charging instrument. In *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), we explained that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.*, at 304, 52 S.Ct. 180. We have since applied the *Blockburger* test to delineate the scope of the Fifth Amendment's Double Jeopardy Clause, which prevents multiple or successive prosecutions for the "same offence." *See, e.g., Brown v. Ohio*, 432 U.S. 161, 164-166, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). We see no constitutional difference between the meaning of the term "offense" in the contexts of double jeopardy and of the right to counsel. Accordingly, we hold that when the Sixth Amendment right to counsel

attaches, it does encompass offenses that, even if not formally charged, would be considered the same offense under the *Blockburger* test.

*Id.* at 172-73 (footnote omitted). The magistrate applied this reasoning to the facts before him as follows:

[D]efendant is charged in three counts: One count charges him with a conspiracy to distribute crack cocaine, and two other counts charge him with distribution of crack. The two counts charging him with distribution involve transactions other than those that resulted in charges lodged against him in state court. Thus, the state charge and the two federal distribution charges necessarily will involve proof of different facts; indeed, they are entirely separate offenses, involving different dates and people. The time frame alleged in the conspiracy count obviously includes the time at which the defendant was charged by the state authorities, January 2002. But again, defendant was charged by the State of Tennessee with possession of crack cocaine for resale and possession of marijuana, both of which involve considerably different factual predicates from those necessary to prove a conspiracy to distribute crack cocaine.

In conclusion, in light of *Texas v. Cobb, supra,* the defendant's Sixth Amendment right to counsel with respect to the state charges did not leap forward and attach to the investigation that ultimately resulted in defendant's indictment in this Court.

The government points out that Story has forfeited this issue by failing to file objections to the magistrate's report and recommendation, which the district court adopted in an order which notes, "The defendant has filed no objection to this report." *See Thomas v. Arn*, 474 U.S. 140, 147 (1985) (upholding sixth circuit rule conditioning an appeal of issues decided in a magistrate's report upon the filing of objections in the district court). In fact, the report and recommendation itself advised counsel, "Any objections to this report and recommendation must be filed within ten (10) days of its service or further appeal will be waived."

Story has forfeited this claim by failing to file objections to the magistrate's report and recommendation. For that reason, there is no need for us to reach the claim on the merits. However, if we were to reach the merits, we would find no error in the district court's analysis.

*Sentencing Concerns*

Finally, Story appeals from the decision of the district court to enhance the base offense by two levels for possession of a firearm during a drug transaction. United States Sentencing Guidelines § 2D1.1(b)(1) ("If a dangerous weapon (including a firearm) was possessed, increase by 2 levels.") (2002). The presentence report gives the following explanation for its recommendation of this enhancement:

According to testimony of a confidential informant, Michelle Tolley, at the defendant's trial on January 15, 2002, during a recorded drug transaction, the defendant had a firearm located on the seat

of his vehicle. At that time, Michelle Tolley purchased .6 grams of crack cocaine for $100 from the defendant. Therefore, the offense is increased by two levels.

Story lodged the following objection:

Michelle Tolley testified at trial that she was a drug addict, was currently incarcerated due to pending drug charges, and had been convicted for crimes of dishonesty. The Court instructed the jury to consider her testimony with more caution due to the government's promise of leniency in exchange for her testimony. The jury found Mr. Story guilty of only one of the two drug transactions for which he was indicted, and Michelle Tolley testified that she was involved in both counts . . . . Her testimony regarding a dangerous weapon in the vehicle during a drug transaction was uncorroborated, and the Court should not rely on her unreliable testimony . . . .

The probation officer replied that the jury had apparently accepted Tolley's testimony in convicting Story of the substantive trafficking count, and hence it was logical to credit her testimony with respect to the firearm. The district court accepted the recommendation in an order ruling upon objections to the presentence report. The order relies upon the testimony of Tolley without assessing her credibility.

After the Supreme Court issued its opinion in *Blakely v. Washington*, 542 U.S. ___, 124 S. Ct. 2531 (2004), Story filed a letter brief with this court challenging the two-level enhancement for possession of a firearm as well as a finding by the district court that he possessed 1.67 kilograms of cocaine base when the indictment only specified 50 grams or more.

The Supreme Court recently extended *Blakely*'s logic to the federal Sentencing Guidelines in *United States v. Booker*, 543 U.S. __, 125 S.Ct. 738 (2005). The Court concluded that a mandatory application of the Guidelines runs afoul of the Sixth Amendment in instances where federal judges make factual determinations that increase a defendant's sentence beyond the range authorized by the Guidelines. *Id.* at 756 (Stevens, J.) The Court's remedy, however, was to excise 18 U.S.C. § 3553(b)(1), which made the Guidelines mandatory, thereby eliminating any Sixth Amendment problems. *Id.* at 756-57 (Breyer, J.). In light of *Booker*, federal district court judges may depart from the Guidelines when sentencing, assuming that they "take account of the Guidelines together with other sentencing goals." *Id.* at 764 (Breyer, J.) Furthermore, we now review the sentences imposed by the district court for reasonableness. *Id.* at 765 (Breyer, J.)

Because Story objected to the enhancement for possession of a firearm in the presentence report, he preserved the issue for appellate review. *See id.* at 769 ("we expect reviewing courts to apply ordinary prudential doctrines, for

example, whether the issue was raised below and whether it fails the 'plain-error' test") (Breyer, J.) Because mention of the gun was not included in the indictment or found by the jury beyond a reasonable doubt, the district court in sentencing Story exceeded the scope of the jury's verdict when it assessed this enhancement under a mandatory Guidelines system.

The Supreme Court mentioned in *Booker* that it was not necessary for every appeal to result in a new sentencing hearing. According to our reading of *Booker*, only those appeals that raise legitimate Sixth Amendment violations and have preserved the issue for review require resentencing. *See id.* (Breyer, J.) Because Story's appeal raises a genuine Sixth Amendment violation and he preserved the objection, we do not determine whether the sentence imposed was reasonable. Rather, we prefer to remand the issue to the district court for resentencing, because under a constitutional, non-mandatory Guidelines regime, the district court could opt to deviate from the sentence required by the Guidelines.

In contrast to the enhancement for gun possession, Story did not object to the district court's determination of drug quantity either in the presentence report or before the district court. Accordingly, we review whether the district court committed plain error when he determined the drug quantity for sentencing. *United States v. Oliver*, 205 WL 233779 (6th Cir. Feb. 2, 2005) at *6. In order to show plain error, Story must satisfy the following criteria: "(1) that an error occurred in the district court; (2) that the error was plain, *i.e.,* obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings." *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998) (citing *Johnson v. United States,* 520 U.S. 461, 467 (1997)).

We conclude that the district court committed plain error. *See Oliver*, at *6 (finding plain error for a Sixth Amendment violation pursuant to *Booker* even though defendant raised his objection for the first time on appeal). Under the first prong of plain error analysis, the district court erred because it sentenced Story under mandatory Guidelines to a greater drug quantity than what was apparent from the jury's verdict. Second, the error was plain, because though "the law at the time of trial was settled and clearly contrary to the law at the time of appeal–it is enough that an error be 'plain' at the time of appellate consideration." *Johnson*, 520 U.S. at 468. Third, we find that the error affected Story's

substantial rights. This normally means that the error "must have affected the outcome of the district court proceedings." *United States v. Cotton*, 535 U.S. 625, 632 (2002) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). It is clear that the district court's computation of drug quantity, which increased the amount from "more than 50 grams" to 1.67 kilograms, affected sentencing by increasing the Guidelines range from 210 to 262 months to 360 months to life. Finally, this error affected the fairness, integrity or public reputation of the judicial proceedings, *Johnson*, 520 U.S. at 467, because it implicated a fundamental constitutional right.

## Conclusion

The conviction is **affirmed,** but the sentence is **vacated** and **remanded** for further proceedings pursuant to Justice Breyer's majority opinion in *Booker*.