RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0099p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

               *Plaintiff-Appellee*,

    *v.*

CARLOS DASHAWN BROWN,

               *Defendant-Appellant*.

No. 22-3797

─────────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:19-cr-00247-1—Solomon Oliver, Jr., District Judge.

Decided and Filed: April 30, 2024

Before: SILER, NALBANDIAN, and MATHIS, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:** Kevin M. Schad, FEDERAL PUBLIC DEFENDER'S OFFICE, Cincinnati, Ohio, for Appellant. Justin Seabury Gould, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

SILER, J., delivered the opinion of the court in which NALBANDIAN, J., joined in full, and MATHIS, J., joined in Part II and in the result.

─────────────────

## OPINION

─────────────────

SILER, Circuit Judge. Like any other criminal defendant, Carlos Brown has a right to be brought to trial within seventy days of his arraignment—absent, of course, the Speedy Trial Act's laundry list of exclusions. 18 U.S.C. § 3161 *et seq.* Yet Brown alleges that, in the 1,176 days between his arraignment and his guilty plea, his right to a speedy trial was twice violated.

Either violation would warrant the dismissal of his indictment. We consider whether these violations were covered by the Act's exclusions. *Id.* § 3161(c)(1), (h)(1).

The first violation involved a thirty-six-day delay in transporting Brown from Ohio to the Federal Medical Center ("FMC"), Lexington for his competency evaluation. This delay, according to the district court, was excludable. It denied Brown's motion to dismiss. The second violation involved a twenty-one-day period after the denial of Brown's first motion to dismiss. Again, the district court denied Brown's motion to dismiss. It instead entered a twenty-one-day retroactive ends-of-justice continuance. We find that the district court erred in denying both motions, vacate his conviction, and remand to the district court to determine whether his indictment should be dismissed with or without prejudice.

## I. Brown's Transportation Claim

### A.

Brown was indicted under fraud and identity theft charges for his role in a credit card scheme. By December 19, 2019, forty-two days of non-excludable time had elapsed on Brown's Speedy Trial clock.[1] That day, the district court granted the parties' joint motion for a competency evaluation and ordered Brown to "self report to the nearest facility as designated by the Bureau of Prisons within 45 days of said designation." Later that day, Brown returned to his residential treatment center and broke down, screaming, crying, and hitting staff members. He was taken into custody for violating the conditions of his bond.

On December 23, the district court ordered that Brown remain in custody and that he "not be allowed to self-report to his examination. Instead, he must immediately report as soon as a facility is designated and the examination shall be conducted as soon as possible." It took

---

[1]As of Brown's first motion to dismiss, the parties agreed that forty-nine days had elapsed on Brown's Speedy Trial clock. But the district court recalculated the elapsed days when deciding Brown's second motion to dismiss and concluded that the parties had been mistaken, and only forty-two days had elapsed. The district also recognized that it erroneously excluded weekends and holidays from its 18 U.S.C. § 3161(h)(1)(F) calculation and added four days. But under either calculation, forty-two non-excludable days passed before December 19, 2019.

The government now claims—in a footnote and without argument—that only thirty-five days elapsed. Because the government failed to make this argument to the district court and has not attempted to argue that the district court's conclusion was clearly erroneous, we disregard this claim.

eighteen days—until January 10, 2020—for the Bureau of Prisons ("BOP") to designate FMC Lexington for Brown's evaluation. Yet the designation remained unresolved: *This* designation was pursuant to the district court's initial December 19 self-report order, rather than its amended December 23 order. *See United States v. Brown*, No. 1:19-CR-247, 2021 WL 4804743, at *2 (N.D. Ohio Oct. 13, 2021). Fourteen days later, on January 24, BOP confirmed that FMC Lexington would remain suitable for Brown's evaluation under the district court's December 23 order, after all. *Id.* Ten days after that, on February 3, the marshals began transporting Brown from Ohio to FMC Lexington. *Id.* Four days later, on February 7, Brown arrived. *Id.*

**B.**

The Speedy Trial Act requires the government to try a defendant within seventy days from indictment or arraignment, whichever is later, with certain days excluded from the calculation. *See* 18 U.S.C. § 3161(c)(1), (h)(1).

Transporting a defendant to a competency evaluation is one such exclusion. When a court orders that a defendant be transported to a competency evaluation, the government has ten days to get the defendant to the facility. 18 U.S.C. § 3161(h)(1)(F). We will refer to this as the "transportation period." The ten-day transportation period starts with the order directing transportation and ends with the defendant's arrival at the facility. *United States v. Turner*, 602 F.3d 778, 782-83 (6th Cir. 2010). Any time beyond that is presumed unreasonable and is included in the defendant's Speedy Trial clock calculation. 18 U.S.C. § 3161(h)(1)(F). The government may rebut that presumption of unreasonableness "[i]f legitimate problems arise in transporting a defendant[.]" *Turner*, 602 F.3d at 785.

When reviewing a denial of a motion to dismiss on Speedy Trial Act grounds, we review the district court's legal conclusions de novo and its factual findings for clear error. *United States v. Sobh*, 571 F.3d 600, 602 (6th Cir. 2009). We review whether the district court properly excluded certain days from the Speedy Trial clock for abuse of discretion. *United States v. Richardson*, 681 F.3d 736, 739 (6th Cir. 2012).

**C.**

Brown alleges that his rights under the Speedy Trial Act were first violated when thirty-six countable days elapsed between the court's December 23, 2019, transportation order and his February 7, 2020, arrival at FMC Lexington.

***Did the December 23 order trigger the ten-day transportation period?***

We first consider whether the district court's December 23 order, which directed that "[Brown] must immediately report as soon as a facility is designated and the examination shall be conducted as soon as possible[,]" qualified as a transportation order triggering the ten-day transportation period in 18 U.S.C. § 3161(h)(1)(F). Brown argues that it did. The government disagrees. It instead argues that the transportation period started on January 24, 2020, when BOP designated FMC Lexington for Brown's evaluation. Because this is a legal question, we review it de novo. *See United States v. Zabawa*, 719 F.3d 555, 561 (6th Cir. 2013) (reviewing de novo a district court's conclusion that a delay in transportation did not count toward the defendant's Speedy Trial clock).

When a district court issues one order concerning the evaluation and transportation of a defendant, the order qualifies as an "order directing . . . transportation." *See Turner*, 602 F.3d at 784 ("Here, the court's first order covered evaluation *and* transportation, which satisfies the requirement of an 'order directing . . . transportation.'" (quoting 18 U.S.C. § 3161(h)(1)(F))).[2] This order directing transportation starts the ten-day transportation period. *Id.* at 782 ("The relevant period under § 3161(h)(1)(F) beg[ins] with the order directing [] transportation and end[s] with the defendant's arrival at the destination." (quotations omitted)). BOP's designation of a facility is irrelevant to the transportation period. *Id.* at 784 ("The statute says nothing about the designation of a specific institution; it refers only to the 'transportation of any defendant . . . to and from places of examination or hospitalization,' and starts counting days on 'the date . . . [of] an order directing such transportation.'" (alterations in original) (quoting 18 U.S.C.

---

[2]The district court's order in *Turner* read: "Further, as part of this Order, the United States Marshal and the Bureau of Prisons are hereby directed to conduct the transportation and the evaluation of the defendant in an appropriate, expeditious manner." *Turner*, 602 F.3d at 783.

§ 3161(h)(1)(F))).  The district court here directed Brown's transportation in its December 23 order.  That is when the ten-day transportation period began.

The government argues semantics.  It agrees that an order both requiring a defendant's evaluation and directing his transportation starts the ten-day transportation period.  Yet it denies that the December 23 order was such a two-in-one evaluate-and-transport order.  Instead, the government fixates on the order's requirement that Brown be transported "as soon as a facility is designated."  This phrase, the government argues, makes the order to transport Brown conditional on the designation of a facility.  In the government's view, such a "*conditional* transportation order" does not trigger the ten-day transportation period until BOP designates a facility.

But this is a distinction without a difference.  Any transportation order that does not name a facility is conditioned on the designation of a facility—after all, where would the government be transporting the defendant if it had not yet designated a facility?  The "conditionality" of Brown's transportation order is meaningless.  *Turner* is clear that Brown's December 23 designate-and-transport order started the ten-day transportation period.

The district court could have averted the issues instigated by the designation delay if it had filed two orders:  one directing the designation of a facility for Brown's evaluation, and then, upon the designation of a facility, a second order directing the marshals to transport Brown.  *See id.* at 784 (implying that when a district court issues a facility designation order, then—upon the facility's designation—issues a separate transportation order, the ten-day transportation period begins running upon the transportation order).  The government claims that the district court's order accomplished the same goal as *Turner's* two-order suggestion, albeit in one order.  But the government misses the point:  *Turner* dictates that when a district court orders the evaluation and transportation of a defendant in a *single order*, that one order is considered a transportation order.  Such is the case with the district court's order that "[Brown] must immediately report as soon as a facility is designated and the examination shall be conducted as soon as possible."  That order "covered evaluation *and* transportation, which satisfies the requirement of an 'order directing . . . transportation.'"  *Id*. (quoting 18 U.S.C. § 3161(h)(1)(F)).  Had the district court

intended for the orders to be read separately, it could have issued two separate orders—as it did later in the proceedings, when Brown required a second competency hearing.

In short, the ten-day transportation period started on December 23, 2019, when the district court issued its transportation order. Brown's transportation concluded on February 7, 2020, meaning that he spent thirty-six days in transportation beyond the excepted ten-day transportation period. *See* 18 U.S.C. § 3161(h)(1)(F).

### *Did the government rebut the presumption that the thirty-six-day delay was unreasonable?*

These thirty-six days are presumptively unreasonable and, unless the government rebuts the presumption, count toward Brown's Speedy Trial clock. The government may rebut this presumption of unreasonableness if it provides evidence that there were legitimate logistical issues in arranging transportation, *see Turner*, 602 F.3d at 785, or that the delay was the prisoner's fault, *see Zabawa*, 719 F.3d at 562 (finding that delays caused by a defendant's injuries from fighting, a hunger strike, and disciplinary violations were the defendant's fault, thus rebutting the presumption of unreasonableness). The government cannot rebut the presumption by vaguely relying on logistical difficulties. *Turner*, 602 F.3d at 783.[3] We review this application of the Speedy Trial Act for abuse of discretion. *See Richardson*, 681 F.3d at 739.

The government has done very little to rebut the presumption of unreasonableness on appeal. It only claimed that the "legitimate problems" leading to the delay included the "rapid change in circumstances brought about by Brown's bond violation, his sudden return to custody, and the revocation of his ability to self-report." It also asserted that "Brown has not shown the court erred in finding that the government had rebutted the presumption." But this argument improperly shirks the burden of proof and passes it to Brown: The government must rebut the presumption of unreasonableness. And here, the government's vague reference to the "legitimate problems" it faced do not rebut that presumption. The three "legitimate problems"

---

[3]For example, the Fifth Circuit found that the government did not rebut the presumption by relying on budgetary constraints or the "showing of diligent effort." *United States v. Castle*, 906 F.2d 134, 137 (5th Cir. 1990). The Ninth Circuit found that delays for "matters of economy"—to accommodate the group transport of prisoners— do not rebut the presumption of unreasonableness. *United States v. Taylor*, 821 F.2d 1377, 1384 (9th Cir. 1987), *rev'd on other grounds*, 487 U.S. 326 (1988).

the government cites are three ways of stating the same problem: that Brown was initially ordered to self-report to the facility, but four days later, the government was instead ordered to transport him. The government does not explain why this four-day change caused such disruption to Brown's transportation that it took forty-six days to move him from Ohio to FMC Lexington. Rather, these are the type of vague logistical difficulties which we held insufficient to rebut the presumption of reasonableness in *Turner*. *See Turner*, 602 F.3d at 783 (holding that "vaguely relying" on logistical difficulties cannot rebut the presumption of unreasonableness).

Because the government did not sufficiently brief this issue on appeal, we return to the record. The only evidence the government presented regarding the delay was the affidavit of Jeffrey Oleksiak, the Marshals Service investigative analyst tasked with arranging Brown's transportation to his evaluation.

Oleksiak's affidavit is largely repetitive of the facts already presented. He stated that he received initial notice "[o]n or about" December 19 indicating that BOP would designate a facility where Brown was to self-report. He then learned "[o]n or about" December 23 that the court remanded Brown to the custody of the marshals.

Oleksiak then pinned the delay on BOP. He explained that BOP's process of designating a facility for a defendant who is on bond is different from its process of designating a facility for a defendant who is in custody, because "the holding facility completes a medical report that must be reviewed and considered by BOP in making their final designation."

So, "on or about" December 23, Oleksiak informed BOP that the court remanded Brown, and BOP confirmed it would review Brown's medical report. "On" January 10, BOP notified Oleksiak that it had designated FMC Lexington based on the December 19 order, but that it was not sure if that designation would remain in light of Brown's December 23 remand. "On" January 24, BOP notified Oleksiak that it would allow Brown to maintain his designation of FMC Lexington. That day, Oleksiak started arranging transportation with the marshals. "On or about" January 29, the marshals confirmed they could transport Brown. "On or about" February 3, the marshals began transporting Brown. Brown arrived at FMC Lexington on February 7.

After reviewing Oleksiak's affidavit, we are left with more questions than answers about the delay in designating FMC Lexington for Brown's evaluation.

Because Oleksiak is affiliated with the Marshals Service, he could not shed light on BOP's inability to designate a facility for Brown, despite blaming it for the delay. Although Oleksiak referenced a medical report, he did not explain why it took BOP twenty-two days—from December 19 to January 10—to designate FMC Lexington in the first place, even when it knew around December 23 that Brown had been remanded to custody. Likewise, he failed to explain why it took BOP until January 24—more than a month from the order, and another fourteen days from the initial designation—to decide that FMC Lexington would still be suitable for Brown's evaluation. If BOP had a legitimate explanation for these delays, the government should have offered evidence to that effect, rather than relying on a non-BOP witness.[4]

And although Oleksiak arranged Brown's transportation with the marshals, he did not explain why it took the service ten days—between January 24 and February 3—to *start* transporting Brown to FMC Lexington, when the district court ordered that Brown "immediately report as soon as a facility is designated."

In short, the government's explanation for the delay leaves large swaths of the calendar unaccounted for and does not rebut the presumption of unreasonableness. *See* 18 U.S.C. § 3161(h)(1)(F). The "government offers no handhold for rebutting the presumption that it should not take the marshals more than ten days to transport an inmate from a prison to the site of a competency examination." *Turner*, 602 F.3d at 783. The district court abused its discretion in finding otherwise. So, thirty-six days are added to Brown's clock. With seventy-eight days on his Speedy Trial clock, Brown surpassed the Speedy Trial Act's seventy-day limit. *See* 18 U.S.C. § 3161(c)(1). On this argument alone, we vacate Brown's conviction. *See* 18 U.S.C. § 3162(a)(2).

---

[4]During a hearing on this issue, the district court itself noted that BOP "isn't the same as the U.S. Marshal, two different entities, and then there's no indication that the Marshals have authority over the Bureau to require them to designate."

**D.**

Brown also argues that six more days should count toward the clock, based on the delay in returning him to custody following his evaluation. His argument is meritless. Brown arrived back in Ohio on March 25, 2020, but the psychiatric report arrived weeks later, on April 17. The period between the examination and the arrival of the report can be excluded as delay resulting from a competency proceeding, even if the transportation exception does not apply. *See* 18 U.S.C. § 3161(h)(1)(A).

**II.  Brown's Ends of Justice Continuance Claim**

**A.**

In July 2021, Brown moved to dismiss the indictment under the Speedy Trial Act, alleging, as above, that the time the government took to transport him to FMC Lexington went beyond the ten-day time limit for transportation under 18 U.S.C. § 3161(h)(1)(F). The district court held two hearings on the matter. Following the second hearing on August 25, the district court took the motion under advisement, meaning it had thirty days to issue an order before Brown's Speedy Trial clock began to run again. *United States v. Moran*, 998 F.2d 1368, 1371 (6th Cir. 1993). Forty-nine days later, on October 13, the district court denied Brown's first motion to dismiss.

Twenty-one days later, on November 3, 2021, Brown filed his second motion to dismiss under the Speedy Trial Act, arguing that (1) the nineteen extra days the district court took when it had his first motion under advisement—September 24 to October 13—and (2) the twenty-one days between the court's order denying his first motion to dismiss and his second—October 13 to November 3—brought his Speedy Trial clock over the threshold of seventy countable days.

The district court denied Brown's motion. It first agreed with Brown and concluded that nineteen non-excludable days elapsed while it was deciding the first motion to dismiss and

should be added to Brown's Speedy Trial clock.  This brought Brown's elapsed days from forty-six[5] to sixty-five.

But the court denied Brown's second argument.  It retroactively placed an ends-of-justice continuance on the record between October 13, when it denied Brown's first motion to dismiss, and November 3, when Brown filed his second motion to dismiss.  The court provided a limited justification for the continuance:

> [T]he court held a Pretrial Status Conference in the case in a reasonable period of time following the court's order, and provided notice of the conference on October 18, 2021, just five days after the court's order.  Second, this is consistent with the circumstances under which the court had routinely placed ends-of-justice continuances on the record while awaiting the next procedural steps in the case. . . .  This is no different.  In doing so, the court considered its schedule as well as anticipated when counsel might reasonably be available under the circumstances.

R. 68, 342 (citation omitted).  Brown eventually pled guilty to three charges pursuant to a plea agreement, was sentenced to thirty-eight months in prison—thirty-three of which he had already served in pretrial detention—and has since begun his three years of supervised release.  Brown was also ordered to pay restitution of $177,716.07.

**B.**

The Speedy Trial Act allows for a continuance whenever a district court finds "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."  18 U.S.C. § 3161(h)(7)(A).  But this "substantive openendedness" is balanced by "procedural strictness":  To enact an ends-of-justice continuance, the district court must take several steps.  *Zedner v. United States*, 547 U.S. 489, 509 (2006).

First, *before* the continuance begins, the district court must consider certain statutory factors: whether the failure to grant a continuance would result in a miscarriage of justice or make continuation of the proceeding impossible; whether the case's unusual nature or complexity requires extra time for preparation; whether there is a delay in filing the indictment

---

[5]As we noted earlier, while the parties initially agreed that forty-nine days had elapsed to this point, the district court then recalculated and concluded that only forty-six days had elapsed.

because of timing or complex or unusual facts; and whether the failure to grant a continuance would deny the defendant reasonable time to obtain counsel, unreasonably deny a party continuity of counsel, or deny a party reasonable time necessary for effective preparation. 18 U.S.C. § 3161(h)(7)(B). Next—but still before granting the continuance—the district court must make findings, even "if only in the judge's mind," that the ends of justice would be served by a continuance and would outweigh the defendant's and public's interests in a speedy trial. *Zedner*, 547 U.S. at 506-07. Then, by the time the district court rules on the defendant's motion to dismiss under § 3162(a)(2), it must put its express findings on the record, orally or in writing. *Id.*

We review the district court's decision to grant an ends-of-justice continuance under 18 U.S.C. § 3161(h)(7)(A) for an abuse of discretion. *United States v. Williams*, 753 F.3d 626, 635 (6th Cir. 2014). A district court abuses its discretion when it does not properly place its reasoning on the record. *Richardson*, 681 F.3d at 740.

## C.

The question here is whether the district court abused its discretion in entering its ends-of-justice continuance. Brown contends that it did. The government disagrees. We find that the district court abused its discretion because it failed to conduct a proper ends-of-justice analysis on the record, as demanded by the Speedy Trial Act. *See* 18 U.S.C. § 3161(h)(7)(A).

Consider again the factors that Congress, through the Speedy Trial Act, commands district courts to consider when contemplating an ends-of-justice continuance: whether the failure to grant a continuance would result in a miscarriage of justice or make continuation of the proceeding impossible; whether the case's unusual nature or complexity requires extra time for preparation; whether there is a delay in filing the indictment because of timing or complex or unusual facts; and whether the failure to grant a continuance would deny the defendant reasonable time to obtain counsel, unreasonably deny a party continuity of counsel, or deny a party reasonable time necessary for effective preparation. 18 U.S.C. § 3161(h)(7)(B).

Compare these permissible factors with those that the district court listed in retroactively entering its ends-of-justice continuance: it held a pretrial status conference after a reasonable period of time; such scheduling was consistent with the circumstances under which it previously

granted ends-of-justice continuances; and it considered its schedule and when counsel might reasonably be available.

The factors the district court considered here do not correlate with those the Speedy Trial Act demands that it consider. Absent from the district court's reasons was any explanation of the "ends of justice" served by its continuance. The district court instead tried to rationalize the twenty-one elapsed days by explaining that it scheduled a status conference at a reasonable time, that it considered its own schedule[6] and counsel's availability, and that such continuances were routine in Brown's case.

In short, the district court's retrospective explanation for its ends-of-justice continuance did not meet the Speedy Trial Act's requirement that it explain, on the record, why the ends of justice served by the continuance outweigh the public's and defendant's interests in a speedy trial. 18 U.S.C. § 3161(h)(7)(A). This failure constituted an abuse of discretion. *Cf. Richardson*, 681 F.3d at 740. As a result, the twenty-one days are not excludable from Brown's Speedy Trial clock. *See Zedner*, 547 U.S. at 507 ("[W]ithout on-the-record findings, there can be no exclusion[.]"); *Richardson*, 681 F.3d at 738-39 (warning that a delay resulting from an ends-of-justice continuance will not be excludable from the seventy-day period unless the court, on the record, balances the ends of justice served by the continuance versus the interests in a speedy trial).[7] With eighty-six days on his Speedy Trial clock, Brown again surpasses the Speedy Trial Act's seventy-day limit, even if the district court correctly disposed of Brown's first motion to dismiss. *See* 18 U.S.C. § 3162(a)(2).

---

[6]This consideration itself was improper, as the Speedy Trial Act forbids district courts from granting continuances because of "general congestion of the court's calendar." 18 U.S.C. § 3161(h)(7)(C).

[7]We also question the district court's timing. The Speedy Trial Act requires the district court make its ends-of-justice findings *before the continuance begins.* 18 U.S.C. § 3161(h)(7)(A); *Zedner*, 547 U.S at 506-07. Otherwise, the district court is improperly "invent[ing] after-the-fact findings to justify an ends of justice continuance that 'cannot fairly be said,' upon review of the record, to have served as its basis for granting the continuance." *United States v. Brown*, 819 F.3d 800, 814 (6th Cir. 2016) (quoting *United States v. Richmond*, 735 F.2d 208, 216 (6th Cir. 1984)).

So, for the district court's retroactive ends-of-justice continuance to be permissible, it must have been determined by the day the continuance began—October 13, 2021—that the continuance served the ends of justice and outweighed Brown's and the public's interest in a speedy trial. *See Zedner*, 547 U.S. at 506. Yet in its post-hoc justification for the continuance, the district court discussed events that occurred days and weeks after October 13. Because the district court's ends-of-justice findings could not have been made before the continuance began, they were improper.

**III.**

The district court erred when it denied each of Brown's motions. Accordingly, we **REVERSE** the district court's decision, **VACATE** Brown's convictions, and **REMAND** for dismissal of the indictment with or without prejudice.[8]

---

[8]Because we vacate Brown's conviction, we need not consider his challenged restitution order.