NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0304n.06

Case No. 23-3368

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jul 16, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| ADOLPHUS PHILPOT, | ) | |
| Defendant-Appellant. | ) | O P I N I O N |
| | ) | |

Before: BATCHELDER, NALBANDIAN, and BLOOMEKATZ, Circuit Judges.

**NALBANDIAN, Circuit Judge.** Adolphus Philpot was tried and convicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He presses three reasons why we should reverse. First, the elapsed time between his arraignment and trial violated the Speedy Trial Act. Second, § 922(g)(1) violates the Second Amendment. And third, his lawyer rendered ineffective assistance when he failed to challenge § 922(g)(1)'s constitutionality and the admissibility of Philpot's incriminating statements. Philpot's first two claims lack merit, and we decline to address the third, so we AFFIRM.

## I.

## A.

In January 2021, Cleveland Police responded to a shots-fired call. They found an individual screaming that he had been shot by an intoxicated Adolphus Philpot with a .380-caliber handgun. A few months later, police arrested Philpot "on an outstanding arrest warrant for

Felonious Assault and Having Weapons While Under Disability" in connection with the shooting. R.56, Rev. PSR, p.3, PageID 275. Once arrested, Philpot placed three calls from jail that Special Agent Brian Middaugh later listened to. Middaugh concluded that Philpot wanted his sister, Diamond Jackson, to retrieve a firearm from an East Cleveland residence—where Philpot at times stayed with his wife, Corina Moses. According to Middaugh, Philpot said that the gun needed to "get out of there because law enforcement is going to come back with a search warrant and search everything and find it." R.65, Trial Tr., p.27, PageID 628. Based on Philpot's phone calls, Middaugh called Jackson, who revealed that the firearms had been moved to her place. Police retrieved two guns from Jackson's bedroom—a loaded Ruger P95 .9-millimeter firearm and a loaded Hi-Point .380-caliber semi-automatic pistol.

After Middaugh again spoke with Moses and Jackson, Philpot called him, asking why Middaugh was calling his family. Worried that police would charge Jackson with possession of the firearms, Philpot told Middaugh, "Charge me with them, then. How about that? You charge me with them. They was mine. They are mine." *Id.* at p.70, PageID 671. Middaugh later interviewed Philpot in person without an attorney present, and Philpot confessed the firearms were his and had been moved.

**B.**

Philpot was indicted on December 2, 2021, and arraigned on January 20, 2022. The single-count indictment charged Philpot with possessing firearms as a felon, violating 18 U.S.C. §§ 922(g)(1) and 924(a)(2). 349 days passed between Philpot's arraignment and the beginning of his trial on January 4, 2023. But Philpot's own counsel moved for three continuances in that span. We explain the timeline below.

On March 10, 2022, Philpot's first attorney moved to withdraw, which stopped the Speedy Trial Act clock. Both parties agree that 49 nonexcludable days passed between Philpot's arraignment and March 10, 2022. The next day, Philpot's new attorney filed the first continuance motion, requesting that the trial be moved from March 28, 2022, because counsel had just been appointed, and a continuance was needed to "prepare a defense to the allegations." R.20, 1st Cont. Mot., PageID 54. The district court granted the continuance three days later, moving the trial to June 15, 2022. R.21, 1st Cont. Order, PageID 57.

The dispute here arises from the second continuance motion, which Philpot's counsel filed on May 30, 2022, because of "a scheduling conflict with the trial date" of June 15, 2022. R.23, 2d Cont. Mot., PageID 60. Counsel was "representing a defendant in an Aggravated Murder case [in state court] . . . on June 13, 2022," and a "reasonable continuance would avert the risk of a miscarriage of justice since counsel will be in trial on another matter." *Id.* The district court granted the continuance the next day because "Defendant's counsel represents he has a scheduling conflict with the trial date and will be representing a defendant in an Aggravated Murder case" on June 13. R.25, 2d Cont. Order, PageID 65. The court explained that "[f]or the foregoing reasons, the Court finds that the ends of justice served by the granting of a continuance outweigh the best interest of the public and defendant in a speedy trial," and cited 18 U.S.C. § 3161(h)(7)(A) and 3161(h)(7)(B)(i), (ii), and (iv). *Id.* The trial was moved to July 18.

On July 8, 2022, Philpot's counsel filed a supplemental motion for a bill of particulars, again stopping the Speedy Trial Act clock. Because Philpot's trial had been set for June 15, 2022, Philpot argues that 23 nonexcludable days passed between June 14 and July 8 based on the erroneously granted second continuance motion. Philpot's counsel requested a third continuance on July 12, 2022, because counsel was "waiting for the response from the government" on the bill

of particulars, and because the government had provided a plea agreement that counsel had not yet discussed with Philpot. R.29, 3d Cont. Mot., PageID 73. The district court granted the continuance that same day and moved the trial to January 4, 2023. R.30, 3d Cont. Order, PageID 76.

At jury selection, Philpot told the court, "I'm trying to inform my attorney that I want the statements challenged from the detective when I had conversation, and he's telling you that he agree[s] with it and he's not going to challenge it right now." R.64, Voir Dire Tr., p.11, PageID 328. The court said that Philpot "must speak through counsel." *Id.* Philpot's counsel later told the court that "Mr. Philpot has asked me to file a motion to dismiss the matter on the basis of a violation of the Speedy Trial Act." *Id.* at p.18, PageID 335. Despite raising this matter, counsel explained that he was "comfortable with the fact that there's more than sufficient time to move forward with this trial in this case, and it's not in violation of the Speedy Trial Act." *Id.* He "advised [Philpot] of that," but Philpot "disagree[d]" and wanted counsel "to file that" motion. *Id.* The court responded that earlier Philpot had been "adamant that [another] motion be filed" and the court had "advised" Philpot "very clearly that that would mean a continuance of the trial while that motion was pending." *Id.* The court concluded it didn't "see any basis for a dismissal based upon a violation of his Speedy Trial" rights and denied the motion. *Id.* at p.19, PageID 336.

The case proceeded to trial, where the jury found Philpot guilty. The court imposed a seventy-seven-month sentence to run consecutively with the time imposed in his state case. Philpot timely appealed.

**II.**

Philpot makes three arguments: (1) that the Speedy Trial Act was violated because of the second continuance; (2) that § 922(g)(1) violates his Second Amendment rights; and (3) that he

4

received ineffective assistance of counsel in violation of the Sixth Amendment. We address each in turn.

**A.**

"We typically review de novo the district court's interpretation of the Speedy Trial Act and its factual findings for clear error." *United States v. White*, 920 F.3d 1109, 1112 (6th Cir. 2019). And we "review the district court's decision to grant an ends-of-justice continuance under an abuse-of-discretion standard." *Id.*[1]

The Sixth Amendment ensures that in "all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The Speedy Trial Act, 18 U.S.C. §§ 3161–3174, adds specificity to this general promise by "establishing time limits for completing the various stages of a federal criminal prosecution," *White*, 920 F.3d at 1112. Criminal trials must "commence within seventy days" of the indictment or arraignment, whichever happens later. 18 U.S.C. § 3161(c)(1). And if "a defendant is not brought to trial within" seventy days, the "indictment shall be dismissed on motion of the defendant." *Id.* § 3162(a)(2).

But the text explicitly excludes several periods of delay from the 70-day count. Importantly, it excludes "[a]ny period of delay resulting from a continuance granted by any judge," but only "if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id.* § 3161(h)(7)(A). To exclude the continuance from the 70-day countdown clock, the

---

[1] The government agrees that "Philpot sufficiently moved for dismissal orally before jury selection," and this "sufficiently preserved review of whether a speedy-trial violation occurred." Appellee Br. at 14–15. Though it argues that "plain-error review should apply to Philpot's different theory on appeal concerning the adequacy of the court's findings in denying the motion itself," *id.* at 15, we are not convinced (and it's immaterial regardless).

court must "set[] forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice" outweigh the benefits of a speedy trial. *Id.*

To help conduct this balancing act, the text directs judges to consider multiple factors "in determining whether to grant a continuance." *Id.* § 3161(h)(7)(B). First, the judge should consider whether not granting the continuance "would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice." *Id.* § 3161(h)(7)(B)(i). The judge should also account for whether the case is "so unusual or so complex," that it's "unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself." *Id.* § 3161(h)(7)(B)(ii). And even if the case is not unusual or complex, the judge should ask whether not granting the continuance "would deny the defendant reasonable time to obtain counsel," "unreasonably deny the defendant or the Government continuity of counsel," or "deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." *Id.* § 3161(h)(7)(B)(iv).

**B.**

Here, "the parties agree that Philpot's initial appearance on January 20, 2022 triggered his speedy-trial clock," and the "parties also agree that 49 countable days elapsed from January 21, 2022 until March 10, 2022." Appellee Br. at 16. So at issue is whether another 23 nonexcludable days passed after counsel moved for a second continuance. Because this forms the crux of the dispute, we reproduce counsel's second motion for a continuance and the district court's order at length. Philpot's counsel wrote:

> This matter is scheduled for trial on June 15, 2022. Undersigned counsel has a scheduling conflict with the trial date and will be representing a defendant in an Aggravated Murder case in *State of Ohio v. Trenton Tate* in the Cuyahoga County Court of Common Pleas. The Tate trial is scheduled to commence on June 13, 2022 at 9am. Consequently, Defendant seeks a continuance of approximately

6

30 days. Accordingly, approval by the Court is sought to continue the trial under the provisions of 18 U.S.C. § 3161(h)(8).

The court must consider whether failure to grant a continuance would "be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice." 18 U.S.C. § 3161(h)(8)(B)(i). A reasonable continuance would avert the risk of a miscarriage of justice since counsel will be in trial on another matter.

R.23, PageID 60. And the district court responded:

Defendant's counsel represents he has a scheduling conflict with the trial date and will be representing a defendant in an Aggravated Murder case in *State of Ohio v. Trenton Tate* in the Cuyahoga County Court of Common Pleas. The *Tate* trial is scheduled to commence on June 13, 2022.

For the foregoing reasons, the Court finds that the ends of justice served by the granting of a continuance outweigh the best interest of the public and defendant in a speedy trial. 18 U.S.C. §§ 3161(h)(7)(A) and 3161(h)(7)(B)(i), (ii) and (iv).

R.25, PageID 65. Philpot alleges that the "district court's findings in its order granting the second continuance were insufficient to satisfy the Speedy Trial Act." Appellant Br. at 14. And if these 23 days are nonexcludable, then it exceeds the Act's 70-day limit. *Id.* Philpot's challenge falls short.

First, the court acknowledged defense counsel's reason for requesting a continuance—a scheduling conflict that would require counsel to achieve an impossible feat: either trying two cases simultaneously or trying two cases scheduled two days apart. *See* R.25, PageID 65. Because the court accepted defense counsel's reasons, we should not view the order in isolation but must also consider the context of the request.

Philpot's counsel made clear that the "court must consider whether failure to grant a continuance would 'be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.'" R.23, PageID 60 (quoting 18 U.S.C. § 3161(h)(7)(B)(i)). And a "reasonable continuance would avert the risk of a miscarriage of justice since counsel will be in

trial on another matter." *Id.* It's plain from the request and its context that counsel did not feel he could adequately represent Philpot in his June 15 trial if he had a murder trial starting two days before. And forcing defense counsel to litigate both on such a compressed timeline may lead to a miscarriage of justice. So the district court concluded that "the ends of justice served by the granting of a continuance outweigh the best interest of the public and defendant in a speedy trial." R.25, PageID 65. The court thus accepted counsel's justification for a continuance.

We have held that a district court may restate the reasons offered by counsel and then accept those reasons for granting a continuance after weighing the necessary factors. In *United States v. Williams*, the defendant argued the district court's order failed because it "phrased its explanation as a restatement of the defense counsel's argument." 753 F.3d 626, 636 (6th Cir. 2014). Affirming the district court's grant of the continuance, we reasoned that by restating the proffered reasons, "the court indicated that it found defense counsel's arguments credible." *Id.*

This precedent makes sense because requiring more tenuously stretches the statute's text. As the Seventh Circuit has recognized, a court's "lack of express mention of the factors set forth in section 3161(h)(7)(B)" is not "fatal to the excludability of the continuances." *United States v. Adams*, 625 F.3d 371, 380 (7th Cir. 2010). The "statute requires that the court consider those factors in weighing the competing interests and to put on the record its reasons for finding the continuance warranted, but it does not require that the court recite the statutory factors or make findings as to each of them on the record." *Id.* So appellate courts have refrained from prescribing a rote recitation of the factors, instead deferring to the discretion of the trial court so long as it was not abused.

By restating counsel's reasons for the continuance, the court below accepted Philpot's counsel's justification for a continuance, *see Williams*, 753 F.3d at 636, and it need not deliver a detailed explanation of the factors in reaching this conclusion, *see Adams*, 625 F.3d at 380.

Second, the court's citation of 18 U.S.C. §§ 3161(h)(7)(A) and 3161(h)(7)(B)(i), (ii), and (iv) reveals that it considered the factors. Examining these provisions shows how the court balanced the delay against the potential downsides. The first applicable provision establishes two goals to be balanced against each other: The delay is excludable "if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id.* § 3161(h)(7)(A). Then, in weighing these interests, § 3161(h)(7)(B) points toward specific factors to consider.

For example, courts "shall" consider whether the "failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice." *Id.* § 3161(h)(7)(B)(i). As defense counsel himself acknowledged, and as noted above, not granting the continuance could result in a miscarriage of justice by forcing defense counsel to try a case for which he was not adequately prepared or even available.

Another factor is whether "the case is so unusual or so complex . . . that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section." *Id.* § 3161(h)(7)(B)(ii). We have endorsed continuances on these grounds when defense counsel "needed more time to prepare." *United States v. Allen*, 86 F.4th 295, 307 (6th Cir. 2023) (per curiam) (citing 18 U.S.C. § 3161(h)(7)(B)(ii)). And we concluded that the district court "did not abuse its discretion by granting the very continuance that [the defendant] sought." *Id.* Given the complexity of Philpot's version of events, such as the many

9

conversations between his family and the police and wanting his statements to the police suppressed, it makes sense why his trial counsel wanted more time.

Last, the court should consider whether the "failure to grant such a continuance . . . would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." 18 U.S.C. § 3161(h)(7)(B)(iv). This factor appears most relevant to our circumstances. Another trial two days before would require defense counsel to either drop out and be replaced with another attorney, thus "deny[ing]" Philpot the "continuity of counsel." Or it would require counsel to go into Philpot's trial without the "reasonable time necessary for effective preparation," even with the exercise of due diligence. So this factor especially supports granting the continuance, as the district court signaled by citing it. *See* R.25, PageID 65.

All said, the district court did not abuse its discretion in accepting defense counsel's proffered justification and citing the relevant statutory factors. Under the Speedy Trial Act, this was sufficient to exclude the second continuance from the 70-day calculation. The text requires no more, so neither can we.

## C.

Nevertheless, Philpot contends that the trial court should have done more when it granted the continuance. He argues that the court should have provided a more detailed statement of his findings and conclusions regarding the balancing required by the Act. Although he cites related cases in support, none show that the district court here did not comply with the Speedy Trial Act's requirements.

Philpot relies on *Zedner v. United States*, 547 U.S. 489 (2006), *United States v. White*, 985 F.2d 271 (6th Cir. 1993), and *United States v. Crawford*, 982 F.2d 199 (6th Cir. 1993). But none gets Philpot as far as he wants to go. *Zedner* supports the general proposition that the Speedy Trial Act "demands on-the-record findings and specifies in some detail certain factors that a judge must consider in making those findings." 547 U.S. at 509. So *Zedner* seems more backdrop than on-point. And the portion of *White* that Philpot cites comes from dicta reminding courts to "comply with the requirement for on-the-record reasons" after the court had found the issue waived. 985 F.2d at 275 ("In spite of defendant's waiver of this argument, we wish to stress the need for judicial officers handling criminal cases to follow the requirements of the Speedy Trial Act." (footnote omitted)).

*Crawford* comes the closest to helping Philpot prove his point, but there the district court appears to have casually granted a continuance in an oral colloquy without contemplating the above factors. 982 F.2d at 203. "The court made no statement of reasons or findings of facts" and the exchange was so cursory that the court neglected to "even explicitly grant a continuance." *Id.* at 205. On appeal, we observed that this was insufficient under the Speedy Trial Act because "[t]here is no indication in the record that the court gave any thought as to whether the continuance would serve the ends of justice *before* granting the continuance." *Id.* Here, by contrast, the court stated its reasons and the factual considerations underlying those reasons when it granted Philpot's second continuance request. It also cited the relevant ends-of-justice factors in its order, indicating it had thought about them before granting the continuance. So, contrary to Philpot's argument, *Crawford* does not reveal an error below.

In all, these cases provide helpful context and help mark the outer bounds of the district court's discretion, but they do not require us to rule in Philpot's favor.

Philpot also cites *United States v. Crane*, 776 F.2d 600, 605 (6th Cir. 1985), for the proposition that an "attorney scheduling conflict is not an appropriate basis for an ends-of-justice continuance," and *United States v. Brown*, 819 F.3d 800, 820 (6th Cir. 2016), arguing "that 'the Act does not provide for the exclusion of delay based on a generalized finding that government counsel or defense counsel is unavailable for a particular trial date,'" Appellant Br. at 16 (cleaned up). These statements are too broad. Neither addresses the situation where defense counsel alone is the one to make the continuance request.

Take *Crane*. There we found a continuance inappropriate because it was based in part on the "*trial judge's unavailability*" and "a lack of diligent preparation *on the part of the government*." *Crane*, 776 F.2d at 605 (emphases added). Although "section 3161(h)(8)(C) prohibits the government's lack of preparation from being a reason for granting an excludable continuance," the opposite is true when it came to defense counsel's preparedness: "The lack of preparation by Crane's counsel, however, is not governed by section 3161(h)(8)(C). Defense counsel's unpreparedness, even if due to a lack of diligence, could be a valid reason for finding that the failure to grant the continuance would have resulted in a miscarriage of justice." *Id. Brown* proves the same point. *Brown* again dealt with *government*, not defense counsel, unavailability. 819 F.3d at 804–05 (explaining that the government moved for a continuance, which Brown opposed, based on an agent's unavailability).

So we have questioned district courts for granting continuances based on their own congested dockets, the prosecution's unpreparedness, *Brown*, 819 F.3d at 812, and trying to rationalize a delay based on their own and counsel's availability, *United States v. Brown*, 100 F.4th 703, 713 (6th Cir. 2024). None of these say it is an abuse of discretion to grant a continuance when defense counsel is unprepared and may be unavailable on the scheduled trial date. In fact,

we've held the opposite. *See Allen*, 86 F.4th at 307 (no abuse of discretion to grant continuance when defendant's "own attorney" needed more time); *United States v. Richardson*, 681 F.3d 736, 739–43 (6th Cir. 2012) (no abuse of discretion when defendant's counsel requested multiple continuances to review discovery). So while the statute does not permit delay by the prosecution if it is unprepared, it gives grace to defense counsel. It was thus not an abuse of discretion to grant the continuance at defense counsel's behest.

### III.

Next, Philpot's § 922(g)(1) challenge. For the first time on appeal, Philpot argues that we "should vacate" his conviction under § 922(g)(1) "because the statute is unconstitutional, both as applied and facially." Appellant Br. at 23. Because he did not raise this claim below, we review for plain error. *United States v. Johnson*, 95 F.4th 404, 415 (6th Cir. 2024); *United States v. Bowers*, No. 22-6095, 2024 WL 366247, at *2 (6th Cir. Jan. 31, 2024). And plain-error review requires that a defendant show (1) an error, (2) that was "plain," (3) affecting the defendant's "substantial rights," and (4) seriously impacted "the fairness, integrity or public reputation of judicial proceedings." *Johnson*, 95 F.4th at 416 (quoting *Greer v. United States*, 593 U.S. 503, 507–08 (2021)).

As to the first two, a "plain error" must be "clear or obvious, rather than subject to reasonable dispute." *United States v. Kennedy*, 65 F.4th 314, 325 (6th Cir. 2023) (quoting *United States v. Soto*, 794 F.3d 635, 655 (6th Cir. 2015)); *see also Puckett v. United States*, 556 U.S. 129, 135 (2009). So "at a minimum," the error must be "clear under current law, meaning a finding of clear error is precluded by 'a lack of binding case law' or a circuit split on the issue." *Bowers*, 2024 WL 366247, at *2 (quoting *United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015)).

13

In June 2022, well before Philpot went to trial, the Supreme Court decided *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, which now "requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." 597 U.S. 1, 26 (2022). And Philpot argues that "the government cannot meet its burden of establishing that this application of § 922(g)(1) is 'consistent with the Nation's historical tradition of firearm regulation.'" Appellant Br. at 31 (quoting *id.* at 24).

We reject Philpot's § 922(g)(1) argument because the Sixth Circuit has already decided that *Bruen* challenges to felon-in-possession laws cannot succeed under plain-error review. *See Johnson*, 95 F.4th at 416. We acknowledged in *Johnson*, 95 F.4th at 416, and *Bowers*, 2024 WL 366247, at \*3, that our circuit has yet to address § 922(g)(1)'s constitutionality post-*Bruen*, and an extant circuit split makes this an unsettled question, preventing any error from being "plain," *Johnson*, 95 F.4th at 416–17 (collecting case). So we concluded that "[w]ithout precedent explicitly holding that § 922(g)(1) is unconstitutional and because it is unclear that *Bruen* dictates such a result, we find that [plaintiff] has not satisfied the plain-error standard." *Id.* at 417. That result binds us here, so Philpot's claim fails.[2]

**IV.**

Last, Philpot's ineffective assistance of counsel claims. Because they present mixed law-fact questions, we review de novo ineffective-assistance-of-counsel claims. *United States v.*

---

[2] Plain error "is judged by the law at the time of appellate review." *United States v. White*, 58 F.4th 889, 894 (6th Cir. 2023). And the Supreme Court recently decided *United States v. Rahimi*, No. 22-915, 2024 WL 3074728 (U.S. June 21, 2024). Although we must account for *Rahimi* when conducting our review, it does not change the outcome here. *Rahimi* dealt with a challenge to 18 U.S.C. § 922(g)(8), not (g)(1). What's more, the Supreme Court upheld the constitutionality of the challenged provision. Both because it addressed a different provision and because it endorsed the statute's constitutionality, *Rahimi* in no way suggests that it would be plain error to let Philpot's § 922(g)(1) conviction stand.

*Coleman*, 835 F.3d 606, 612 (6th Cir. 2016). But we prefer that plaintiffs save these claims for collateral, not direct, review for many well-known reasons. "When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose." *Massaro v. United States*, 538 U.S. 500, 504–05 (2003). If the plaintiff waits until collateral review, however, the claim can be "litigated in the first instance in the district court, which is 'the forum best suited to developing the facts necessary to determining the adequacy of representation' because it may take testimony from witnesses including the defendant, prosecution, and counsel." *United States v. Ferguson*, 669 F.3d 756, 762 (6th Cir. 2012) (quoting *Massaro*, 538 U.S. at 505); *see also United States v. Jackson*, 995 F.3d 476, 484 (6th Cir. 2021).

So our "general rule" is that "a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal." *United States v. Martinez*, 430 F.3d 317, 338 (6th Cir. 2005) (quoting *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990) (per curiam)). An exception is that we may consider such a claim on direct appeal "when the existing record is adequate to assess properly the merits of the claim." *United States v. Franklin*, 415 F.3d 537, 555–56 (6th Cir. 2005) (quoting *United States v. Pruitt*, 156 F.3d 638, 646 (6th Cir. 1998)). Philpot argues that this claim is ripe for review on the current record. The government asks that we abstain from review. The government is correct.

Philpot's ineffective-assistance claims attack two choices by defense counsel—not challenging (1) § 922(g)(1) under *Bruen* nor (2) the admissibility of Philpot's incriminating statements. These challenges are typically not appropriate for review on direct appeal because they require developing the record to evaluate counsel's decisions not to raise certain arguments.

*See United States v. Small*, 988 F.3d 241, 256 (6th Cir. 2021) (explaining that courts "rarely consider ineffective assistance claims on direct appeal because record is incomplete or inadequate," which is "true" when claims "all focus on counsels' failure to make certain arguments"). Indeed, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland v. Washington*, 466 U.S. 668, 690 (1984).

Counsel's decisions can be challenged only to the extent that they were not "reasonable." *English v. Romanowski*, 602 F.3d 714, 726 (6th Cir. 2010). This shows why we need a more developed record. The Supreme Court tells us that the "reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland*, 466 U.S. at 691. So we need to look at "information supplied by the defendant" to counsel, as that usually drives counsel's "informed strategic choices." *Id.*

Here, counsel's decision to not challenge § 922(g)(1) under *Bruen* might have been a mistake. Or it might have been a strategic decision given adverse precedent. On this record, we can't say one way or the other. The same goes for the decision not to challenge Philpot's incriminating conversations. Maybe counsel dropped the ball. Or maybe counsel believed there was no meritorious argument given the facts.

Though Philpot asks us to decide this question now because he believes the record is sufficient, his own arguments belie this conclusion. He argues that "there is no mention in the record of the constitutionality of § 922(g)(1) by Mr. Philpot's trial counsel," so "[d]efense counsel was deficient . . . in failing to challenge the constitutionality of § 922(g)(1) given the recent Supreme Court decision in *Bruen*." Appellant Br. at 35. He adds that the "deficiency in trial counsel's representation here cannot be considered a strategic decision" because there "is no basis

in the record to suggest counsel's omission was an 'informed strategic choice.'" *Id.* (quoting *Strickland*, 466 U.S. at 691). But a silent record cuts both ways. We can't tell whether counsel's decision was deficient or strategic.

As for counsel's decision not to challenge Philpot's incriminating statements, Philpot argues that this court "has held that when the 'filing of a motion to suppress had no accompanying tactical cost, a reasonable attorney would have tested' the constitutionality of law enforcements' treatment of their client." *Id.* at 38–39 (quoting *Northrop v. Trippett*, 265 F.3d 372, 383–84 (6th Cir. 2001)). Philpot continues, "there was no tactical downside to moving to suppress Mr. Philpot's statements, and there were no clear strategic reasons not to do so." *Id.* at 39.

Again, the undeveloped record may be why there seems to have been no "strategic reasons" for not raising this challenge. And a fully developed record might help clarify whether counsel believed there were "accompanying tactical cost[s]" to filing the motion to suppress. For example, if counsel believed such a motion would be denied, perhaps he thought it best to keep his powder dry.

On this record, we're left to speculate about strategic reasons and tactical downsides. Rather than opine on an underdeveloped record, this issue is best left "to be decided in the first instance in post-conviction proceedings." *United States v. Bradley*, 400 F.3d 459, 462 (6th Cir. 2005); *see also Small*, 988 F.3d at 256 (holding ineffective-assistance claims were not "ripe for decision" because "the court cannot tell from the record whether trial counsel was ineffective or following sound strategy"). So we decline Philpot's invitation to decide his ineffective assistance claims now.

**V.**

We affirm.